**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| ROBERT A. BURKE, | : |
| Plaintiff, | : Civil Action No. 15-6093(RMB) |
| v. | : **OPINION** |
| DIANE MACARTHUR, | : |
| Defendant. | : |

**BUMB**, District Judge

Plaintiff, Robert A. Burke ("Burke"), who is presently incarcerated in FCI Fort Dix, in Fort Dix, New Jersey, filed the present civil rights complaint on August 10, 2015. (Compl., ECF No. 1.) The only named defendant in the civil rights complaint is Diane MacArthur, an Assistant United States Attorney ("AUSA") and resident of Chicago, Illinois, sued in her individual and official capacities. (Id.)

28 U.S.C. § 1915A provides:

> (a) Screening.--The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

1

> (b) Grounds for dismissal.--On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint--
>
>> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>>
>> (2) seeks monetary relief from a defendant who is immune from such relief.
>
> (c) Definition.--As used in this section, the term "prisoner" means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program.

## I.   BACKGROUND

Burke asserts jurisdiction under 42 U.S.C. § 1983 for false arrest and false imprisonment, "fraud and conspiracy to violate [his] Civil Rights to Liberty and 1st, 4th, 5th and 14th Amendment Guarantees of Due Process and Equal Protection of Law" (ECF No. 1 at 4, §4(b)), and jurisdiction under 18 U.S.C. § 1001 for fraud and false statements. He alleged the following in his Complaint.

AUSA Diane MacArthur directed Burke's sentencing subsequent to his plea agreement for bank larceny in Illinois ("Chicago Case") and for bank fraud in California. (ECF No. 1 at 11, ¶5.) Sentencing was entered on March 3, 1993 in the U.S. District Court, Northern District of Illinois. Id.  MacArthur "publicly

documented" that his Chicago Case "was a pre-Guidelines case (Old Law)" which was not subject to Supervised Release." (Id. at 12, ¶5.) Burke, however, was sentenced to concurrent terms five-years of supervised release, following his concurrent five-year terms of imprisonment. (ECF No. 1 at 19, ¶13; see also Compl., Ex. 11, ECF No. 1-1 at 29.)[1]

    Burke was awarded parole on July 9, 1994. (ECF No. 1 at 13, §7.) Alleging that Burke had not contacted his probation officer since August 23, 1994, MacArthur submitted to the U.S. District Court, Northern District of Illlinois, a Motion for a Rule to Show Cause Why Supervised Release Should Not Be Revoked, or alternatively for issuance of a bench warrant. (ECF No. 1 at 13-14, ¶8.) Burke alleged MacArthur knew, at that time, that his sentence to supervised release was illegal. (Id.) The bench warrant issued. (ECF No. 1 at 14, ¶9.)

---

[1] Exhibit 11 is the "Government's Amended Submission in Support of Request for Correction of Defendant Robert Burke's Sentence," docketed on July 23, 2001 in the U.S. District Court, Northern District of Illinois, in U.S. v. Burke, No. 91 CR 669. In this brief, the Government explained that Burke was sentenced on March 3, 1993 to two concurrent five-year terms of imprisonment, and two concurrent five-year terms of supervised release. The supervised release terms should not have been imposed because the offenses to which Burke pled guilty in 1992 occurred in December 1986, and the Sentencing Guidelines did not become effective until November 1, 1987. Nonetheless, Burke began his Court-imposed supervised release term on July 9, 1994.

Burke was not arrested until September 1998, in London, England. (Id.) Burke was imprisoned in England for two years. (Id.) His parole had expired on January 9, 1997. (Id., ¶10.)

Toward the end of Burke's extradition proceedings, MacArthur responded to Burke's argument that he should not be extradited because he had been in prison in London for two years, and he had already served more time than he could receive on the Rule to Show Cause Violation. (ECF No. 1-1 at 30.) MacArthur responded that Burke could still serve more time because if his supervised release terms were revoked, he could be sentenced to consecutive terms of imprisonment. (Id.)

Burke was extradited in December 2000, and transported to Chicago Illinois. (ECF No. 1 at 15, ¶11.) There, he was questioned by U.S. Government agents about an attempted escape of another inmate in the summer of 1992, and he was told this was why he was extradited. (Id.) He was presented with a subpoena to appear before a grand jury. (Id.) Burke's legal team told him he was extradited for violation of supervised release, and that extradition to appear before a grand jury was not a sanctioned extradition by Treaty. (Id.)

On January 9, 2001, the U.S. District Court, Northern District of Illinois, ordered all parties to file briefs "to show cause why Mr. Burke's Supervised Release should, or should not, be revoked." (Id. at 16, ¶12.) The Court revoked Burke's

4

supervised release on June 26, 2001, and directed the parties to file briefs about sentencing. (ECF No. 1-1 at 43.) This is when MacArthur claimed to have realized the sentencing error, in other words, that supervised release should not have been imposed. (Id.)

On behalf of the Government, MacArthur proposed to correct Burke's sentence with a five-year term of imprisonment on Count One, and a five-year term of probation on the other count. (ECF No. 1-1 at 31-32.) If Burke had been on probation rather than supervised release, the Court could revoke the sentence of probation upon a violation, and impose any other sentence available at the time of the initial sentencing. (Id. at 32.) Thus, the Court could still sentence Burke up to ten years imprisonment for bank theft. (Id.) The Court denied the Government's request to correct Burke's 1993 sentence in this manner and vacated his sentence of supervised release. (ECF No. 1 at 19, ¶13.)

Burke then alleged that in October 2001, "using trickery and deceit, AUSA Diane MacArthur . . . provided [Burke] with immunity from prosecution . . . in exchange for [Burke] answering questions in front of the grand jury, all the while knowing that he, himself, was the actual target of the

5

prosecution." (Id., ¶15.)[2] After Burke testified, MacArthur initiated an indictment against him for perjury before the grand jury. (Id., ¶16.)

On December 5, 2001, the same day he was to be released upon vacation of his sentence for supervised release, he was presented with the complaint for perjury, and returned to custody. (Id.) Burke was convicted and sentenced, and remains incarcerated today. (Id., ¶17.) On October 30, 2002, the U.S. District Court, Northern District of Illinois, in connection with Burke's conviction for perjury, found no bad faith by MacArthur for the sentencing error and related extradition proceedings, and found no motive by the Government to conceal the sentencing mistake until Burke was extradited. (Id.; see also ECF No. 1-1 at 42-44.)

**II. DISCUSSION**

Courts must liberally construe documents that are filed pro se. Erickson v. Pardus, 551 U.S. 89, 94 (2007). Here, Burke is a prisoner who is seeking relief from a governmental employee. Therefore, the Court is required to sua sponte dismiss any claim that is frivolous or malicious; fails to state a claim upon which relief may be granted; or seeks monetary relief from a

---

[2] The Court takes judicial notice of U.S. v. Burke, 425 F.3d 400 (7th Cir. 2005). The Seventh Circuit upheld Burke's conviction and sentence for perjury before a grand jury, regarding his role in a prison escape attempt in June 1992.

defendant who is immune from such relief. 28 U.S.C. § 1915A(b). The standard for assessing whether a complaint fails to state a claim upon which relief may be granted under § 1915(A)(b)(1) is identical to the legal standard used for ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Courteau v. U.S., 287 F. App'x 159, 162 (3d Cir. 2008) (per curiam).

In Count One of the Complaint, Burke alleges violation of 18 U.S.C. § 1001. 18 U.S.C. § 1001 is a criminal statute that does not create a private cause of action. Abou-Hussein v. Gates, 657 F.Supp.2d 77, 81 (D.D.C. 2009); Williams v. McCausland, 791 F.Supp. 992, 1001 (S.D.N.Y. 1992). Therefore, the claims under 18 U.S.C. § 1001 must be dismissed with prejudice.

Burke also asserts jurisdiction under 42 U.S.C. § 1983. "[A] plaintiff seeking to hold an individual liable under § 1983 must establish that []he was deprived of a federal constitutional or statutory right by a state actor." Kach v. Hose, 589 F.3d 626, 646 (3d. Cir. 2009). MacArthur is an Assistant United States Attorney whom Burke alleged acted under color of federal law. Therefore, jurisdiction under § 1983 is improper. However, "[a] Bivens action, which is the federal equivalent of the § 1983 cause of action against state actors, will lie where the defendant has violated the plaintiff's rights

7

under color of federal law." Brown v. Philip Morris Inc., 250 F.3d 789, 800 (3d Cir. 2001); Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 397 (1971) (finding jurisdiction over claims for money damages for any injuries suffered as a result of federal agents' violation of the Fourth Amendment).

Burke sued MacArthur in her individual and official capacities. "An action against government officials in their official capacities constitutes an action against the United States; and Bivens claims against the United States are barred by sovereign immunity, absent an explicit waiver." Lewal v. Ali, 289 F. App'x 515, 516 (3d Cir. 2008) (per curiam). "The Federal Tort Claims Act is the exclusive waiver of sovereign immunity for actions sounding in tort against the United States, its agencies and officers acting within their official capacity." Wilson v. Rackmill, CIV. A. No. 87-0456, 1990 WL 63504 at *7 (E.D. Pa. May 11, 1990); see FDIC v. Meyer, 510 U.S. 471, 485 (1994) ("we implied a cause of action against federal officials [in their individual capacities] in Bivens in part *because* a direct action against the Government was not available") (emphasis in original). Plaintiff has not alleged a claim against the United States under the Federal Tort Claims Act, and the official capacity claims against MacArthur will be dismissed based on sovereign immunity.

There are a several bases to dismiss the remaining individual capacity claims in the complaint upon screening under 28 U.S.C. § 1915A. First, the statute of limitations for a Bivens action, like a § 1983 action, is governed by the statute of limitations for personal injury torts under state law where the injury occurred. Peguero v. Meyer, 520 F. App'x 58, 60 (3d Cir. 2013) (per curiam); Wallace v. Kato, 549 U.S. 384, 387 (3d Cir. 2007). Here, Burke's injuries arose out of the criminal proceedings against him in the Northern District of Illinois. In Illinois, the statute of limitations for personal injury torts is two years. Kelly v. City of Chicago, 4 F.3d 509, 511 (7th Cir. 1992); 735 ILCS 5/13-202.[3]

Federal law governs accrual of the claims. Dique v. New Jersey State Police, 603 F.3d 181, 185 (3d Cir. 2010). "Accrual is the occurrence of damages caused by a wrongful act—'when a plaintiff has 'a complete and present cause of action,' that is, when 'the plaintiff can file suit and obtain relief.'" Id. (quoting Wallace, 549 U.S. at 388) (quoting Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., 522 U.S. 192, 201 (1997)).

---

[3] "§ 13-202. Personal injury--Penalty. Actions for damages for an injury to the person, or for false imprisonment, or malicious prosecution . . . shall be commenced within 2 years next after the cause of action accrued. . ."

9

At the latest, Burke's claims against MacArthur accrued before October 31, 2002. On that date, the U.S. District Court, Northern District of Illinois, addressed Burke's arguments in connection with his criminal case for perjury before a grand jury. (Compl., Ex. 13.) Burke argued that MacArthur acted in bad faith in her efforts to extradite him; that she knew but deliberately hid her knowledge that he was not subject to a sentence of supervised release; and that he was indicted upon a "perjury trap." (See ECF No. 1-1 at 44.) Burke was obviously aware of his claims against MacArthur before October 30, 2002, when he made very similar arguments to those alleged here in his criminal proceeding. Burke filed the present complaint on August 10, 2015, well after the statute of limitations expired in 2004.

The second basis to dismiss the Complaint upon screening is prosecutorial immunity. Prosecutors have absolute immunity for prosecutorial actions that are "intimately associated with the judicial phase of the criminal process." Van de Kamp v. Goldstein, 555 U.S. 335, 341 (2009) (quoting Imbler v. Pachtman, 424 U.S. 409, 430 (1976)). Absolute immunity applies when a prosecutor is acting "as on officer of the court" but not when a prosecutor engages in investigative or administrative tasks. Id. at 342. A functional approach should be applied to determine if a prosecutor's activity is taken as an officer of the court or is investigative or administrative. Id.

10

Absolute immunity applies when a prosecutor prepares to initiate a judicial proceeding or appears in court to present evidence. Id. at 343 (citations omitted). Absolute immunity also attaches to a prosecutor's activity of seeking extradition. Rivera v. Algarin, 350 F. App'x 703, 708 (3d Cir. 2009) (citing Ross v. Meagan, 638 F.2d 646, 648-49 (3d Cir. 1981), overruled on other grounds, Neitzke v. Williams, 490 U.S. 319, 328 (1989); Waits v. McGowan, 516 F.2d 203, 205 (3d Cir. 1975)); Dababnah v. Keller-Burnside, 208 F.3d 467, 472 (4th Cir. 2000) (collecting cases).

Burke complains of MacArthur's submissions to the U.S. District Court, Northern District of Illinois, in connection with his sentencing and subsequent violation of supervised release. These activities were intimately associated with the judicial phase of the criminal process in his "Chicago case." Therefore, MacArthur is entitled to absolute immunity. Furthermore, MacArthur's actions in support of Burke's extradition proceeding are also protected by absolute immunity. Finally, her actions in prosecuting Burke for perjury before a grand jury are entitled to absolute immunity. See Kulwicki v. Dawson, 969 F.2d 1454, 1463-64 (3d Cir. 1992) (decisions to

11

prosecute are absolutely protected, even if the prosecutor acted without good faith).[4]

Burke also alleged that MacArthur "is being sued Individually and in their Official Capacity, with known and Unknown Co-Conspirators." (ECF No. 1 at 9, ¶2.) In Count One, he alleged MacArthur conspired with others by agreeing to conceal the fact that Burke was not subject to supervised release or violation of supervised release, and by agreeing to extradite him to subject him to "wrongful jurisdiction" and "unlawful prosecution." (ECF No. 1 at 22, ¶21.) In Count Two, he alleged MacArthur conspired with others in making fraudulent representations that resulted in Burke's wrongful supervised release sentence, issuance of a bench warrant for violation of

---

[4] The Court also notes that the claims concerning Burke's conviction for perjury are barred by the favorable termination rule of Heck v. Humphrey, 512 U.S. 477 (1994), which precludes a section 1983 action [or Bivens] where success on the claim would call into question the validity of a conviction or sentence, unless the prisoner proves that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. Burke was convicted of perjury, and his claims that MacArthur obtained his conviction through false and deceitful acts would call into question the validity of his conviction and sentence. Id. at 486-87 (1994); see also Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005) (explaining that Heck's favorable termination rule applies "no matter the target of the prisoner's suit ... if success in that action would necessarily demonstrate the invalidity of confinement or its duration"). The Heck-bar precludes these claims until Burke can make a showing of favorable termination.

parole, his extradition, and his conviction for perjury. (ECF No. 1 at 23-25, ¶23.)

Without further explanation, Burke contends that he attached to the Complaint "newly-discovered records of communications among co-conspirators." (Id. at 25.) Burke's Exhibit List identifies the following exhibits to the Complaint:

> 1. Sentencing Transcript, Case No. 91-cr-669, p. 17, lines 9-12.
>
> 2. Sentencing Transcript, Case No. 91-cr-669, p. 25, lines 17-24.
>
> 3. Government Motion to Correct Judgment and Commitment Order, Case No. 91-cr-669, June 2, 1993, AUSA Diane MacArthur.
>
> 4. Court Order, Case No. 91-cr-669, Granting Government Motion for Correction of Judgment and Commitment Order, June 2, 1993.
>
> 5. Certificate of Parole, Robert A. Burke, July 9, 1994.
>
> 6. Government's Motion for a Rules to (Show) Cause Why Supervised Release Should Not Be Revoked, Nov. 29, 1994, AUSA Diane MacArthur.
>
> 7. U.S. District Court Northern District of Illinois Order for Robert Burke Bench Warrant, Nov. 29, 1994, and Warrant for Arrest.
>
> 8. U.S. Parole Commission documentation of communication with Supervisor U.S. Probation Office, Chicago, Illinois, USA.
>
> 9. Bureau of Prisons Administrative Remedy No. 489527-A1.

    10. Government's Amended Submission in Support of Request for Correction of Defendant Robert Burke's Sentence, July 20, 2011, AUSA, Diane MacArthur.

    11. Government's Amended Submission in Support of Request for Correction of Defendant Robert Burke's Sentence, July 23, 2011, AUSA Diane MacArthur.

    12. Government's Submission As To the Pre-Guidelines Sentence Imposed in this Case, August 28, 2001, AUSA Diane MacArthur.

    13. Disposition, Case No. 01-cr-1049, Oct. 30, 2002.

    14. U.S. District Court Void Ab Initio Order, Dec. 5, 2001.

    15. Disposition, Case No. 01-cr-1049, p.1 Booker claim.

To establish a § 1983 civil conspiracy claim, a plaintiff must allege that "persons acting under color of state law conspired to deprive him of a federally protected right." Perano v. Twp. Of Tilden, 423 F. App'x 234, 239 (3d Cir. 2011) (quoting Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 254 (3d Cir. 1999) superseded by statute on other grounds as recognized by P.P. v. West Chester Area Sch. Dist., 585 F.3d 727, 730 (3d Cir. 2009). A bare claim of conspiracy is insufficient to state a claim in a civil rights complaint. Hauptmann v. Wilentz, 570 F.Supp. 351, 375 (D.N.J. 1983). "[P]laintiffs must allege with sufficient particularity that the [defendants] reached some understanding or agreement, or

plotted, planned and conspired together, to deprive plaintiffs of a federal right." Id. (quoting Chicarelli v. Plymouth Garden Apartments, 551 F.Supp. 532, 539 (E.D. Pa. 1982). In order to state a plausible claim for relief based on conspiracy, a complaint must contain "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." Bell Atlantic v. Twombly, 550 U.S. 544, 556 (2007). Legal conclusions in a complaint are not entitled to the presumption of truth. Id. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

In considering dismissal for failure to state a claim, "a court must primarily consider the allegations contained in the complaint, although matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint may also be taken into account." Youse v. Carlucci, 867 F.Supp. 317, 318 (E.D. Pa. 1994) (citing Chester County Intermediate Unit v. Pennsylvania Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990)).

Exhibit 13 to the Complaint contains the following findings made by the United States District Court, Northern District of Illinois, which are clearly contrary to Burke's conspiracy allegations, so as to make his conspiracy claims implausible:

15

Defendant Burke is suspicious of these circumstances. In repeated submissions to the court, he has argued that the circumstances demonstrate that the government acted in bad faith in its efforts to extradite him and suggested that government officials knew but deliberately hid their knowledge that as a pre-Guidelines offender, Mr. Burke was not subject to a sentence that includes a term of supervised release. . . . For several reasons, however, the court finds no basis to go beyond the parties' written submissions, which satisfy the court that although regrettable, the sentencing error and related extradition proceedings do not reflect bad faith.

First, there is no basis to conclude the government improperly sought a Guidelines sentence. In the Government's Version she submitted for sentencing, AUSA MacArthur noted that the case was a pre-Guidelines case and made no sentencing calculations or recommendation. The Probation Officer also utilized pre-Guidelines standards in calculating the custody portion of Burke's sentence. The Probation Officer's report also included information concerning supervised release terms available under the relevant statutes on each of the three charges, then noted explicitly that the Guidelines "only pertain to Indictment No. 92 CR 51," that is, the indictment on which Judge Zagel sentenced Burke. Ms. MacArthur herself was on trial in another courtroom on March 3, 1993, and was not present when Judge Lindberg imposed a sentence of five years on the two counts before him, followed by five years of supervised release. As the government notes in its submissions to this court, even if the Guidelines had applied to the two counts before Judge Lindberg, a supervised release term on either count should have been no longer than three years.

Although a Guidelines sentence is arguably more severe than the appropriate pre-

16

Guidelines sentence, the court notes that the Bureau of Prisons treated Burke as though he had in fact been sentenced to a pre-Guidelines term. When he had (with credit for time served since his arrest) been incarcerated for approximately half of his five-year sentence, he was released. Only July 8, 1994, Burke signed a Certificate of Parole reflecting his July 8 release date and the fact that he had a total of 915 days remaining on his five-year term.

Because the extradition effort rested on Burke's violation of supervised release, the government could arguably have had a motive to conceal the sentencing mistake until after Burke's return to the United States. Burke offers nothing that would establish that the government had such a motive at the time of his sentencing, however, and the government's written submissions belie such a motive. Burke does not suggest that he acted in reliance on any sentencing mistake in choosing to flee the jurisdiction within a few weeks of executing the Certificate of Parole. The Probation Officer referred to Burke's failure to report as a violation of his supervised release, and AUSA MacArthur referred to Burke's conduct as a violation of his supervised release in her motion for a rule to show cause – long before she or any other government officer was aware that Burke had left the country and that an extradition proceeding would be required to bring him back. Nor has Burke confronted the fact that neither the probation officer, nor the court itself, nor Burke's own attorneys, here or abroad, ever raised the matter of an improper or unlawful sentence until AUSA MacArthur caught the mistake and promptly brought it to the court's attention.

Any mistake in the government's or the courts' administration of criminal justice is improper and regrettable. This court concludes no further hearing into this

> matter is appropriate or required, however, because any improprieties in the government's efforts to extradite Burke do not constitute a . . . .[5]

Burke's conspiracy claim is implausible because the Court found no bad faith by AUSA MacArthur, giving cogent reasons to credit MacArthur's claim that she lacked of knowledge of the sentencing mistake, until she herself brought the mistake to the Court's attention. There is no factual support for Burke's conspiracy claim in the exhibits to the Complaint, as Burke contends. Therefore, the Court will dismiss the conspiracy claim for failure to state a claim.

**III. CONCLUSION**

The Court will dismiss the claims against MacArthur with prejudice because no amendment to the Complaint would cure the fact that MacArthur has absolute prosecutorial immunity for the activities alleged. See Grayson v. Mayview State Hospital, 293 F.3d 103, 114 (3d Cir. 2002) (dismissal under 28 U.S.C. § 1915(e)(2)(B) should be without prejudice unless amendment of the complaint would be inequitable or futile). The Court will also dismiss all of the claims as barred by the statute of limitations. The conspiracy claim will be dismissed for failure

---

[5] The exhibit is only an excerpt from the Court Order and ends mid-sentence. The sentence concludes ". . . defense to the court's jurisdiction over him on perjury charges. U.S. v. Burke, 01cr1049, Doc. No. 137, (N.D. Ill. Oct. 30, 2002) (available at www.pacer.gov)

to state a claim upon which relief may be granted. Plaintiff's claims against unknown and unnamed co-conspirators are preserved to the extent Plaintiff can name the defendants, and adequately plead facts that state a claim against them, occurring within the statute of limitations period.

s/Renée Marie Bumb  
Renée Marie Bumb  
United States District Judge

Dated: October 13, 2015